DRB # 24, LLC, a Minnesota Limited Liability Company on behalf of itself, and all those real property owners similarly situated in the City of Minneapolis and 701 Newton Avenue North, Minneapolis, Minnesota, on behalf of itself, and all those similarly situated real properties located in the City of Minneapolis, Minnesota, Plaintiffs,

v.

CITY OF MINNEAPOLIS, a Municipal Corporation, John Doe, and Mary Roe, Defendants.

Civil No. 12–1503 (JRT/JSM).

United States District Court, D. Minnesota.

Sept. 30, 2013.

Mark J. Kallenbach, Kallenbach Law Office, Minneapolis, MN, Michael Kemp, Met Law Group, St. Paul, MN, for Plaintiffs.

Gregory P. Sautter and Kristin R. Sarff, Assistant City Attorneys, Office of the City Attorney, Minneapolis, MN, for Defendant City of Minneapolis.

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

JOHN R. TUNHEIM, District Judge.

This case arises out of the City of Minneapolis' assessment of fees for vacant buildings. Plaintiff DRB # 24 ("DRB"), the owner of a vacant building, brought suit on behalf of himself and others similarly situated challenging the validity of the fees and the City's authority to assess such fees. The matter came before United States Magistrate Judge Janie S. Mayeron on the parties' cross-motions for summary judgment. In an August 2, 2013 Report and Recommendation ("R & R"), the Magistrate Judge recommended that the Court grant Defendants' motion to dismiss because DRB failed to file an appeal of the City's assessments within the time limit provided for such an appeal by Minnesota law. Before the Court are DRB's objections to the R & R. After *de novo* review of the Magistrate Judge's Report and Recommendation, with particular emphasis on consideration of the issues raised in DRB's objections, *see* 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.2(b), the Court will conclude that the R & R is well-supported and

reaches the appropriate legal conclusions in these circumstances. Accordingly, the Court will overrule DRB's objections and adopt the R & R.

## BACKGROUND

### I. THE VACANT BUILDING REGISTRATION PROGRAM

In 2001 Minneapolis established a Vacant Building Registration ("VBR") program. Minneapolis, Minn., Code of Ordinances [hereinafter M.C.O.] § 249.80. Through the program, owners of vacant properties are required to register the vacant property with the City and pay an annual fee. The fee permits the City to "recover all costs incurred by the city for monitoring and regulating vacant buildings, including nuisance abatement, enforcement and administrative costs." M.C.O. § 249.80(j)(1). The amount of the fee is set by the Director's Fee Schedule. *See* M.C.O. § 249.80(j)(i); *(see also* Second Decl. of David Busch, Ex. A, Nov. 7, 2012, Docket No. 18.) If a property owner fails to pay the fee, the City may levy and collect the fee as a special assessment against the property under the City's provision for special assessments for nuisance conditions. M.C.O. § 249.80(j)(3) (referencing M.C.O. § 227.100 (provision for special assessments)). This arrangement is authorized by a Minnesota statute, which permits cities to collect vacant building registration fees as a special assessment against the property. Minn.Stat. § 429.101, subd. 1(a)(12).

When the City intends to assess a VBR fee it must serve a written Notice of Intent to Assess ("Notice") to the property owner. *See* M.C.O. § 249.80(j)(3); M.C.O. § 227.100. The Notice must comply with certain requirements under the Minneapolis Code of Ordinances and the property owner may challenge the assessment at a hearing. *See* M.C.O. § 227.100(d). Under Minnesota law, if the owner does not prevail with his or her objections to the assessment, the owner may appeal the assessment to the district court by serving notice to the mayor or city clerk within thirty days after the adoption of the assessment and filing the notice with the district court within ten days after serving notice to the city. Minn.Stat. § 429.081; *see also* M.C.O. § 227.100(d).[1] Such appeal is the "exclusive method of appeal from a special assessment levied pursuant to this chapter," and "[a]ll objections to the assessment shall be deemed waived unless presented on such appeal." *Id.*

### II. DRB'S SPECIAL ASSESSMENTS

DRB owns the property at 701 Newton Avenue North, Minneapolis. 701 Newton

---

1. It is not clear whether § 429.081 permits a total of forty days for appeal to the district court or thirty days. *See* Minn.Stat. § 429.081 ("Within 30 days after the adoption of the assessment, any person aggrieved ... may appeal to the district court by serving a notice upon [the city]. The notice shall be filed with the [district court] within ten days after its service."). One Minnesota Court of Appeals' opinion interpreted this to mean that § 429.081 permits a total of forty days from the date of adoption for appeal to the district court, *Curiskis v. City of Minneapolis,* 729 N.W.2d 655, 660 (Minn.Ct.App.2007), but the plain language of § 429.081 also could be interpreted to require appeal to the district court within thirty days. Minneapolis Code of Ordinances § 227.100(d) appears to permit only thirty days, see M.C.O. § 227.100(d) ("the owner may appeal the assessment to the district court within thirty (30) days after the adoption of the assessment by the council at an annual meeting"). Because, as the Court will explain below, DRB does not dispute that it never filed notice of appeal of the special assessment in accordance with these procedures, the difference between a thirty and forty day deadline is immaterial. The Court need not determine whether the ten days to file with the district court under § 429.081 are in addition to the thirty days to serve notice upon the city.

is vacant. (Second Busch Decl. ¶ 2.) In June 2011, DRB received a Notice of Intent to Assess for an unpaid 2010 VBR fee of $6,550. (Second Busch Decl., Ex. B.) The 2010 Notice stated in relevant part:

On January 19, 2011 after proper orders were issued by the City of Minneapolis or under emergency authority of the Minneapolis Police or Fire Department, the following action was taken at the address noted above:

**VACANT BUILDING REGISTRATION FEE**

**Total cost is: $6,550.00**

The cost of the correction, fine or fee is proposed to be levied as a special assessment against the property, according to the procedures set out at Minneapolis Code of Ordinances § 227.100.

(*Id.*) DRB appealed the assessment and after an administrative hearing on July 21, 2011, the hearing officer determined that the assessment should be levied in full. (*Id.*, Exs. D, E.)

Again in April 2012, DRB received a Notice of Intent to Assess for an unpaid 2011 VBR fee of $6,746. (*Id.*, Ex. C.) The relevant part of the 2011 Notice is nearly identical to the 2010 Notice:

On February 3, 2012 after proper orders were issued by the City of Minneapolis or under emergency authority of the Minneapolis Police or Fire Department, the following action was taken at the address noted above:

**VACANT BUILDING REGISTRATION—CONB POSTED ON 12/19/2010**

**Total cost is: $6,746.00**

The Cost of the correction, fine or fee is proposed to be levied as a special assessment against the property according to

the procedures set out at Minneapolis Code of Ordinances § 227.100[.]

(*Id.*) DRB objected and the hearing officer adopted the assessment on May 31, 2012. (*Id.*, Exs. F, G.)

## III. PROCEDURAL HISTORY

DRB does not dispute that it did not appeal the assessments to the district court within the deadline in accordance with Minn.Stat. § 429.081. (*See* Letter to Magistrate Judge, March 14, 2013, Docket No. 40 (in response to Letter to Magistrate Judge, March 14, 2013, Docket No. 40).) Instead DRB filed this action in state court on behalf of itself, its vacant property at 701 Newton Avenue in Minneapolis, and other owners and properties similarly situated against the City and unknown individual defendants.[2] (Notice of Removal, Ex. A ("Compl."), June 22, 2012, Docket No. 1.) The Complaint alleges over thirty claims against the City related to the assessments: that the VBR fee is higher than actually required to monitor vacant buildings, (Compl.¶¶ 41–50), that the interest rate exceeds the interest rate permitted by Minnesota law and violates Minnesota usury law, (*Id.* ¶¶ 85–91, 122–28), that the VBR fee violates the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution and sections Eight, Ten, and Thirteen of the Minnesota State Constitution, (*Id.* ¶¶ 51–84, 92–121, 144–50), and that the City does not have the legal authority to specially assess VBR fees, (*Id.* ¶¶ 122–36). Most relevant to DRB's objections to the R & R, the Complaint alleges that the City failed to provide DRB with proper notice of the basis of the fee. (*Id.* ¶¶ 137–43.) Additionally, the Complaint brings causes of action for intentional and

---

**2.** The Court will refer collectively to defendants as the "City," and will refer collectively to plaintiffs as "DRB."

negligent misrepresentation, unjust enrichment, and slander of title. (*Id.* ¶¶ 151–84.)

The City removed to federal court, denied the allegations in the Complaint and asserted various defenses, including a defense that some claims were barred by the Tax Injunction Act, 28 U.S.C. § 1341. (Notice of Removal, June 22, 2012, Docket No. 1; Answer, June 22, 2013, Docket No. 2.) DRB moves for partial summary judgment on the Tax Injunction Act defense and the Magistrate Judge recommended that the Court grant DRB's motion. The City does not object to that recommendation, so the Court need not consider that issue further and will adopt the recommendation of the Magistrate Judge to dismiss the motion. DRB also moves for partial summary judgment on counts IX through XIX of the Complaint (counts related to the interest rate, the City's authority to assess the fees, and the adequacy of the City's notice of the fees).[3] The City moves for summary judgment on all issues except for the reasonableness of the fees.

The Magistrate Judge issued an R & R, recommending that the Court grant summary judgment for the City on all counts. (R & R, Aug. 2, 2013, Docket No. 62.) The Magistrate Judge reasoned that, because DRB failed to appeal the assessments within thirty days of their adoption, all of DRB's claims are barred by Minn.Stat. § 429.081 and M.C.O. § 227.100. (R & R at

1100–02.) To the extent that DRB argued that those appeal procedures and the time limit for appeal did not apply because the assessments were void for improper notice, the Magistrate Judge found that the Notices met the requirements of M.C.O. § 227.100. (R & R at 1102–03.)

■ DRB objects to the R & R, raising three issues for the Court: (1) whether the City's Notices of its intent to assess the fees were deficient, (2) if the Notices were deficient, whether the appeal deadline properly applies, and (3) whether the appeal deadline applies to claims DRB characterizes as "non-special assessment causes of action," such as fraud, unjust enrichment, and negligent misrepresentation.[4] Because parties are required to state objections to a Report and Recommendation with particularity, see Fed. R.Civ.P. 72(b)(2), the Court will consider only DRB's three, specific objections to the R & R and will not reach or comment on any other issue in the case.

## DISCUSSION

### I. STANDARD OF REVIEW

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed.R.Civ.P. 72(b)(2); *accord* D. Minn. LR 72.2(b). "The district

---

3. DRB also initially sought summary judgment on the issue of whether the fees are reasonable, but later withdrew that request without prejudice. (*See* Letter to Magistrate Judge, Mar. 8, 2013, Docket No. 36.).

4. The City argues that DRB's objections are not properly before the Court because DRB failed to request transcripts of the proceedings before the Magistrate Judge in accordance with Local Rule 72.2(b)(1). *See* D. Minn. LR 72.2(b)(1) ("Unless the district judge orders otherwise, the objecting party must promptly arrange for transcribing the

record, or whatever portions of it the parties agree to or the magistrate judge deems sufficient."). DRB did not request the transcripts, so the Court has not had the benefit of reviewing the transcripts of proceedings before the Magistrate Judge. But DRB's objections to the R & R are not based on what occurred during those proceedings, so the Court concludes that it may address DRB's objections without the benefit of the transcripts. *See United States v. Agboola,* Civ. No. 01–162, 2003 WL 292081, at *1 n. 2 (D.Minn. Jan. 21, 2003).

judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed.R.Civ.P. 72(b)(3).

 Here, the Magistrate Judge issued a recommendation applying the standard for summary judgment. Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. NOTICE

DRB argues that the City's Notices of the special assessments were deficient under M.C.O. § 227.100. That section states the notice requirements applicable to the Notices DRB received:[5]

> Such notice shall state the amount and basis for the costs and the time, date

and place of a hearing before a hearing officer appointed by the council to determine the validity and amount of the proposed assessment. The notice may require, as a prerequisite to an owner's challenge of an assessment, that the owner file written objections to the assessment no later than fifteen (15) days before the hearing. The notice shall state that the owner may appeal the assessment to the district court within thirty (30) days after the adoption of the assessment by the council at an annual meeting. The notice shall also inform the owner of the provisions of Minnesota Statutes Sections 435.193 to 435.195 and of the existence of any deferment procedure.

M.C.O. § 227.100. DRB argues that the Notices it received were deficient in two ways: they failed to state the "basis for the costs" and they failed to inform the owner of "the existence of any deferment procedure."

 The City argues that the issue of the Notices' deficiency is not properly before the Court because DRB did not allege in its Complaint that the Notices were defective. Count XIX of DRB's Complaint is entitled "City's Special Assessments for Unpaid Vacant Building Registration Fees Are Void for City's Failure to Comply with MCO § 227.100(d)." (Compl. at 39.) In the Complaint, DRB also alleges that the

---

5. Before the Magistrate Judge, the parties disputed which notice requirements applied to the City's notice: M.C.O. § 227.100 or Minn. Stat. § 429.061. The Magistrate Judge found that the City's Notices need meet only the requirements of M.C.O. § 227.100, (R & R at 1102–03), and DRB does not object to that finding. Even if it had, the Court would likely find that the City may elect to issue notices in accordance with its own ordinance, rather than Minn.Stat. § 429.061, as Minnesota courts have found that municipalities may enact and apply specific notice provi-

sions as alternatives to § 429.061. *See Curiskis*, 729 N.W.2d at 658 ("Minnesota Statutes chapter 429 governs local improvements and special assessments, and allows a city to use either chapter 429 or its home rule charter in making improvements and imposing special assessments."); *cf. Singer v. City of Minneapolis*, 586 N.W.2d 804, 805 (Minn.Ct.App. 1998) ("Absent a specific charter or ordinance provision governing the assessment procedure, Minn.Stat. ch. 429 applies to special assessments made under the city's home rule charter.").

2010 and 2011 Notices "d[id] not disclose the 'basis for the costs' of the annual Vacant Building Registration Fees." (*See id.* ¶ 139; *see also id.* ¶¶ 137–43.) Based on these allegations, the Court finds that DRB adequately raised the issue of deficient notice in its Complaint. Although those paragraphs substantively challenge only the Notices' adequacy with regard to the "basis of the costs," the Court broadly construes Count XIX's challenges to the adequacy of notice in general and will consider both of DRB's arguments against the adequacy of the Notices.

## A. Basis for the Costs

DRB argues that the Notices failed to state the basis for the costs, and instead "[m]erely characterize[ed] or describe[ed] in a narrative form" what the proposed assessments were for. (Pl.'s Objections at 7, Aug. 16, 2013, Docket No. 63.) Specifically, DRB argues that the Notices should have provided a "foundation, development, calculation or explanation" that would justify the amount of the fee. (*Id.* at 6.) The Court must therefore determine whether the language from the Notices stating: "VACANT BUILDING REGISTRATION FEE" and "Total cost is: $6,550.00" sufficiently provides notice of the basis for the costs as required by the Ordinance.

▆▆▆ The ordinance states that the Notice need include only the "basis" for the cost, not the calculation or a justification for it. M.C.O. § 227.100. Words and phrases used in the Minneapolis Code of Ordinances "shall be construed in their plain, ordinary and usual sense." M.C.O. § 3.10. The term "basis for the costs" is most reasonably interpreted in this situation to mean a description of what the costs are for, not a thorough calculation of or justification for the VBR. Generally, the purpose of notice is to enable the owner to challenge the assessment. *See Meadowbrook Manor, Inc. v. City of St. Louis Park*, 258 Minn. 266, 104 N.W.2d 540, 543 (1960) ("property owner is entitled to a reasonable notice" of special assessment and was entitled to notice that would give taxpayer "opportunity to question the validity of the amount of the assessment"). The information in these Notices provided sufficient information for DRB to challenge the assessments: the Notices made clear that the fees were for the Vacant Building Registration program. DRB would not have needed more specific information about how the City calculated the amount of the fees assessed to its property because the amount of the fees were standardized, not unique to DRB's property. To the extent DRB wished to challenge the amount and justification of the standard fee, it could do that through the objection and appeal procedures, but would not need more information in the Notices about how the City calculated the amounts in order to do so.[6]

▆▆▆ To the extent DRB argues that the requirements of Minnesota Statutes § 429.061 should inform the interpretation

---

**6.** Under other circumstances for which M.C.O. § 227.100 prescribes the notice requirements, more explanation might be necessary, as M.C.O. § 227.100 also applies to situations in which the City has completed work to abate a specific nuisance on a property, such as mowed the lawn or trimmed the hedges after the owner failed to do so. In such a situation, "basis for the costs" might include the cost for each type of work completed, the total of which amounts to the total special assessment for that property. Here, however, the costs were assessed not for work done that would be unique to 701 Newton, but as the City's required fee for a vacant building set according to the Director's Fee Schedule. The Notices clearly stated that basis of the fee, which was sufficient information for DRB to challenge the fee in the administrative hearing (and in the instant action).

of the term "basis" in MCO § 227.100, Minn.Stat. § 429.061 does not support DRB's interpretation.[7] It requires that:

Such notice shall state the date, time, and place of such meeting, the general nature of the improvement, the area proposed to be assessed, the total amount of the proposed assessment, that the proposed assessment roll is on the file with the clerk, and that written or oral objections thereto by any property owner will be considered.

Minn.Stat. § 429.061. With regard to the amount of the assessment, Minn.Stat. § 429.061 requires that the notice include only the "total amount of the proposed assessment." None of its other require-

ments—the "general nature of the improvement" or the "area proposed to be assessed" would require the kind of calculation and justification for the total amount that DRB proposes is required.[8]

Because the Notices identified the amount and type of fee being assessed, the Court finds that the Notices the City sent to DRB adequately stated the "basis for the costs" under M.C.O. § 227.100.

### B. Deferment Procedures

■ DRB also argues that the Notices were deficient because they failed to include information about the "existence of any deferment procedure." The ordinance requires that the notice "inform the owner

---

**7.** The Court questions the extent to which a distinct Minnesota Notice statute bears on the interpretation of a Minneapolis ordinance. Nothing in Minnesota law requires the Court to construe M.C.O. § 227.100 in light of Minn.Stat. § 429.061. Rather, based on the relevant case law, it seems that municipalities are permitted to pass ordinances enumerating notice requirements that replace Minn.Stat. § 429.061. *See, e.g., Curiskis,* 729 N.W.2d at 657–58 ("Minnesota Statutes chapter 429 governs local improvements and special assessments, and allows a city to use either chapter 429 or its home rule charter in making improvements and imposing special assessments."). To the extent that DRB argues that § 429.061 must serve as the minimum, floor, requirements and municipalities can replace it only with ordinances with more stringent notice requirements, the Court finds no basis for that in Minnesota law.

**8.** DRB cites two cases in support of its contention that "basis for the costs," includes the underlying justification for the fee, but neither applies to the circumstances here. In the first, the Eighth Circuit found that the district court abused its discretion in ordering $50,000 in attorney sanctions, apparently for attorney misconduct, but with no explanation of how the court reached that amount. *Plaintiffs' Baycol Steering Comm. v. Bayer Corp.,* 419 F.3d 794, 809 (8th Cir.2005). The Eighth Circuit noted that it was "difficult for our court to evaluate whether the sanction is ap-

propriate" because of the "district court's failure to explain the basis for the amount of the sanction" and found that a more detailed explanation was necessary for such a large sanction amount. *Id.* at 808–09. Although the Eighth Circuit's use of the term "basis" in this case supports DRB's argument that "basis" means a foundation or explanation for how an amount was calculated, the circumstances of the case differ significantly from the context of the term "basis" here. A district court's award of attorney sanctions is a highly discretionary matter, which, as in *Bayer,* can require detailed explanations to support the use of that discretion. That differs substantially from a city's standard fee for vacant buildings, set annually for all such buildings in the city.

The other case involved another very different context—the notice required to be provided to union members in order for them to object to "fair share" fees. There, the information required to be included in the notice was set out by state regulation, which required that the notice contain "sufficient information to identify expenditures for collective bargaining and contract administration services." *Kuehn v. Am. Fed'n of State, Cnty. & Mun. Emps., Council No. 65, Hibbing, Minn.,* 435 N.W.2d 130, 133 (Minn.Ct.App. 1989) (quoting Minn. R. 5510.140, subpt. 1(D) (1987)). The notice required by a separate statutory scheme and accompanying regulations does not bear on the notice required under Minneapolis ordinance.

of the provisions of Minnesota Statutes Sections 435.193 to 435.195 and of the existence of any deferment procedure." M.C.O. § 227.100. DRB argues that the term "any deferment procedure" required the City to inform him that the fee may be waived or suspended, which the City permits as a term of a written restoration agreement or order of demolition, or if the property is acquired by the Community Planning and Economic Development Department. *See* M.C.O. § 249.80(j)(1) (citing § 249.50) (the VBR fee may be "waived or suspended for the current year as a term or condition of a written restoration agreement or order issued pursuant to § 249.50. This fee may be waived for the current year and previous years if the property is acquired by the Community Planning and Economic Development (CPED) Department.").

■ The Court concludes that the phrase "or the existence of any deferment procedure" does not require the City to include information in the Notices about possible waivers and suspensions because waiver and suspension are distinct from deferment in the Minneapolis Code of Ordinances. The Minneapolis Code of Ordinances does not define "deferment procedure," waiver, or suspension. But it refers to waiver and suspension as such, not as deferments, even though it elsewhere refers explicitly to deferral. For example, the Code explicitly delineates deferral procedures for sewer and water service-related payments. *See* M.C.O. §§ 509.910, 509.970, 505.90.[9] "It is a well-established

canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words." *S.E.C. v. McCarthy,* 322 F.3d 650, 656 (9th Cir.2003) (citing *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)). The Code could have labeled the waiver and suspension procedures in M.C.O. § 249.80(j)(1) as deferrals, as it did in the sewer and water service sections, but it did not. Moreover, the waiver and suspension DRB points to contemplate that the fee in question may never be paid (e.g., if appropriate restorations are made), whereas a deferment contemplates merely a prolonged schedule for payment.

In light of the references in the same sentence to specific deferment procedures, and the contemplation of other deferrals in the Minneapolis Code of Ordinances, DRB's interpretation that "any deferment procedure" includes the suspension or waiver available when a vacant building owner enters into a restoration agreement is not plausible. The Court therefore finds that the Notices sent to DRB comply with M.C.O. § 227.100 with regard to informing the owner of the "existence of any deferment procedure."

## III. DEADLINE FOR APPEAL

DRB's next objection to the R & R is that, because notice was deficient, the City lacked jurisdiction to adopt the assessments so the time frame for appealing the

---

**9.** The Code also once references deferral in the context of housing assessments, noting that the housing appeals board does not have authority to take any action with respect to vacant building fees except to recommend that collection be deferred for up to a year. M.C.O. § 242.80 (citing M.C.O. § 87.150). This might constitute a deferment procedure that the City failed to include in the Notices, but DRB does not argue that the Notices were

deficient for failing to reference this section. The existence of this deferral does not further DRB's argument that waiver and suspension constitute "deferment procedures" that should have been included in the Notices. Rather, the Court takes this reference to deferred vacant building payments as evidence that the Minneapolis Code of Ordinances distinguishes between "waivers" or "suspensions" and "deferrals."

assessments never began to run and the appeal procedures in Minn.Stat. § 429.081 did not apply.

■ The Magistrate Judge recommended that the Court find that DRB waived its claims by failing to properly file an appeal with the district court within 30 days of the adoption of the assessments. If a property owner fails to do so, all objections to the special assessment are waived. Minn.Stat. § 429.081 ("All objections to the assessment shall be deemed waived unless presented on such appeal."). The statute also precludes a property owner from raising objections to the special assessment in any other manner. *Id.* ("This section provides the exclusive method of appeal from a special assessment levied pursuant to this chapter."). Minnesota courts have interpreted this statute to mean unambiguously that there is "no other avenue of contesting special assessments." *Sievert v. City of Lakefield,* 319 N.W.2d 43, 44 (Minn.1982), citing *Krahl v. Nine Mile Creek Watershed Dist.,* 283 N.W.2d 538, 545 (Minn.1979); *see also Peterson v. City of Inver Grove Heights,* 345 N.W.2d 274, 277 (Minn.Ct.App.1984) ("Minn.Stat. §§ 429.061, subd. 2 and 429.081 are not ambiguous. They require timely written objections or a reasonable cause for failing to so object to preserve the right to appeal. The clear objective of the statutes was to improve the assessment process by promoting participation in the process and to insure a degree of finality.").

Specifically, the Minnesota Supreme Court interpreted Minn.Stat. § 429.081 to mean that, where a property owner did not object pursuant to § 429.081 but rather sued directly in district court, the owner waived the right to assert any claims against the municipality attacking the assessment. In *Sievert v. City of Lakefield,* the court held that Minn.Stat. § 429.081 barred contract claims attacking a special assessment that plaintiff attempted to bring as direct suit, finding that "[s]ince the legislative intent of section 429.081 is clear, Sievert can maintain his suit only if it is not an attack on a special assessment." 319 N.W.2d at 44 (noting "there is no suggestion" that plaintiff could not have brought his contract claims in the hearing process provided); *see also Chard Realty, Inc. v. City of Shakopee,* 392 N.W.2d 716, 719 (Minn.Ct.App.1986) (owner waived objections to assessment by not objecting or appealing according to Minn.Stat. § 429.081).

■ Appeal under Minn.Stat. § 429.081 is not the exclusive method of attacking an assessment, however, if the City failed to provide proper notice of its intent to assess. This is because the City has the authority to adopt assessments only when it provides adequate notice. *Klapmeier v. Town of Ctr. of Crow Wing Cnty.,* 346 N.W.2d 133, 136 (Minn.1984) ("Proper notice of assessment proceedings is a jurisdictional prerequisite to any action by the town board. There must be strict compliance with the statutory notice provisions." (internal citations omitted)); *see also Sykes v. City of Rochester,* 787 N.W.2d 192, 197 (Minn.Ct.App.2010) (city council "lacked jurisdiction to adopt the assessments because it did not strictly comply with the statutory notice requirements. Because the assessments were never adopted, the 30–day limitations period never began to run."); *Countryside Village v. City of North Branch,* 430 N.W.2d 206, 208 (Minn.Ct.App.1988), *aff'd* 442 N.W.2d 304 (Minn.1989).[10]

---

**10.** However, if the Court found that the delay in appealing the assessment was so long that it prejudiced the City in its ability to defend the special assessment, even a defect in notice

DRB does not object to the Magistrate Judge's finding that Minn.Stat. § 429.081 applied to its assessments and that it failed to file an appeal in satisfaction of its requirements.[11] Rather, DRB argues that the time limit for appeal to the district court never began because the City lacked jurisdiction to adopt the assessments because its Notices of the assessments were deficient. But the City's Notices here were adequate and complied with the requirements under Minneapolis ordinance, as discussed above. Thus, the City had jurisdiction to adopt the assessments and DRB was required to file objections with the City and appeal to the district court in accordance with Minn.Stat. § 429.081, which it did not do. The Court finds that the City's jurisdiction to adopt the special assessments was not invalid because of deficient notice and the appeal procedures of Minn.Stat. § 429.081 applied.

■ Finally, DRB argues that the appeal procedures and time limit do not apply because the special assessments are facially void because they bear no relation to the benefits received. Whether or not an assessment is reasonably related to the benefits the property owner receives is a

question for a court once the assessment is properly before the court, not a basis for a court to preemptively declare an assessment void such that the time limit for appeal never began to run. DRB cannot avoid the time limit and procedures for appeal by disputing the reasonableness of the fee, as the Court could not reach a conclusion on that question before the issue is properly before the Court (through a proper, timely appeal). The case DRB cites in support of facially voiding assessments involved disputes that were properly before the court after the owner complied with the relevant appeal procedures. *See Cont'l Sales & Equip. v. Town of Stuntz*, 257 N.W.2d 546, 549–50 (Minn. 1977) (determining that the plaintiffs' objections were properly before the court and then, reviewing the objections themselves, determining that a portion of the assessment at issue was void because it did not relate to the benefits the owners received); *see also American Bank of St. Paul v. City of Minneapolis*, 802 N.W.2d 781, 784 (Minn.Ct.App.2011) (court considered challenge to reasonableness of assessment, where plaintiff had properly appealed the special assessment to the district court).1[12] DRB provides no legal authori-

---

may not permit a property owner to challenge an assessment after the time limit in § 429.081 expired. *See Shortridge v. Daubney*, 425 N.W.2d 840, 842 (Minn.1988) ("On the record before us, we hold that Shortridge, Berglund and Daubney's delay of approximately four years in challenging the special assessment precludes relief from the assessment based upon a technical defect in the notice of assessment as to the length of time within which an appeal to district court may be taken.").

11. It is not clear why DRB did not do so. It seems that it would have been possible for DRB to comply with the timing requirements of the appeal procedure under § 429.081, as it filed this action within thirty days of the hearing officer's 2012 decision. The record is not clear as to why this action could not be

construed as an appeal under § 429.081, but DRB does not dispute that it did not properly file an appeal under those procedures.

12. In *Continental Sales & Equipment*, the Minnesota Supreme Court held that taxpayers could challenge a special assessment levied as real estate tax through the procedures under *either* Minn. Stat. § 429.081 or § 278.01, meaning that a taxpayer who missed § 429.081's deadline could still challenge the assessment. 257 N.W.2d at 548–49. But that case was decided before the Minnesota Legislature amended § 429.081 to add that "[t]his section provides the exclusive method of appeal from a special assessment levied pursuant to this chapter." *See Sievert*, 319 N.W.2d at 44 (noting *Continental Sales & Equipment*, but clarifying that the legislature amended the section and that "this change clarified legisla-

ty, and the Court has found none, in which a court exempted property owners from the appeal procedures of Minn.Stat. § 429.081 based on an initial determination that the assessment was facially void. Because DRB did not timely or properly appeal the assessments, the Court need not consider any challenge to the amount of the fees and cannot preemptively void the assessments so as to render the requirements of § 429.081 inapplicable. DRB was required to appeal the assessments through the procedures listed in § 429.081. Because it did not, the Court cannot consider its objections to the assessments. *See In re Skyline Materials, Ltd.,* 835 N.W.2d 472, 477 (Minn.2013) ("Statutory provisions for service of notice must be strictly followed in order for a court to acquire jurisdiction.").

## IV. OTHER CLAIMS BARRED BY APPEAL DEADLINE

Finally, DRB argues that its causes of action that are not related to the assessments are not subject to the time limit. In making this argument, DRB appears to consider its registration with the City for the VBR program to be a contract, giving rise to contractual causes of action such as fraud, negligent misrepresentation, and unjust enrichment. DRB makes no argument and provides no evidence upon which a reasonable jury could conclude that it had a contract with the City such that those claims could be considered separate from its objections to the assessment. Rather, those claims essentially attack the City's adoption of the assessments, and are barred by DRB's failure to appeal the

assessments pursuant to § 429.081. *See Sievert,* 319 N.W.2d at 44 (explaining that plaintiff could have brought contract claims that essentially attacked the assessment as part of special assessment appeal, and such claims were therefore waived by failure to appeal under § 429.081).[13]

All of DRB's claims seek to challenge the special assessments and should have been filed as an appeal from the assessments through the procedure laid out in Minn.Stat. § 429.081. DRB did not do so. Therefore, the Court will adopt the recommendation of the Magistrate Judge to dismiss DRB's claims with prejudice.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** plaintiffs' objections [Docket No. 63] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated August 2, 2013 [Docket No. 62]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Partial Summary Judgment as to Defendants' Tax Injunction Act Defense [Docket No. 9] is **DENIED as moot.**

2. Plaintiffs' Motion for Partial Summary Judgment [Docket No. 15] is **DENIED.**

3. Defendants' Motion for Summary Judgment [Docket No. 33] is **GRANTED.**

4. Plaintiffs' lawsuit is hereby **DISMISSED with prejudice.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

tive intent that there be no other avenue of contesting special assessments").

**13.** DRB also argues that the City cannot use its own charter and laws inconsistently with statute or common law. But it is not the City's charter or ordinances that make appeal

under Minn.Stat. § 429.081 the exclusive method for objecting to a special assessment—it is state law. Certainly the Minnesota Legislature has the power to limit the manner and time in which parties can raise certain claims.

## REPORT AND RECOMMENDATION

JANE S. MAYERON, United States Magistrate Judge.

This matter is before the Court on plaintiffs' motions for Partial Summary Judgment [Docket Nos. 9, 15] and defendants' Motion for Summary Judgment [Docket No. 33].[1] Mark J. Kallenbach, Esq. appeared on plaintiffs' behalf. Kristin R. Sarff, Esq. and Gregory P. Sautter, Esq. appeared on defendants' behalf.

These matters were referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) [Docket No. 26].

## I. FACTUAL BACKGROUND

DRB# 24 is a Minnesota Limited Liability Company that acquired 701 Newton Avenue North, Minneapolis ("701 Newton"), in June 2008, for $11,200. Second Declaration of David Busch ("Busch Decl. II"), ¶ 2 [Docket No. 18]. 701 Newton is vacant and as of November 2012, had thirty open housing code violations. Affidavit of Kristin Sarff ("Sarff Aff."), Ex. A (code compliance record for 701 Newton) [Docket No. 24].

In June 2011, DRB# 24 received a Notice of Intent to Assess from the City of Minneapolis ("City")[2] for 2010 unpaid Vacant Building Registration ("VBR") fees in the amount of $6,550. Busch Decl. II, Ex. B. The assessment was appealed and the matter was heard on July 21, 2011, by an administrative hearing officer who determined that the assessment should be lev-

ied in full. Id., Exs. D, E. The Notice of Decision provided that the assessment could be appealed to the state district court by serving the Notice of Appeal upon the Mayor or City Clerk within thirty days of the adoption of the assessment by the City Council. Id., Ex. E.

In April 2012, DRB# 24 received a Notice of Intent to Assess $6,746 for 2011 unpaid VBR fees on 701 Newton Ave. Id., Ex. C. The assessment was appealed and on May 31, 2012, an administrative hearing officer ordered that the assessment be levied in full. Id., Ex. F, G. The Notice of Decision provided that the assessment could be appealed to the state district court by serving the Notice of Appeal upon the Mayor or City Clerk within thirty days of the adoption of the assessment by the City Council. Id., Ex. G. The 2010 and 2011 assessments appear on the City's special assessment rolls, indicating that the fees were adopted and assessed. Id., Ex. H.

Minnesota Stat. § 429.081 provides that any person aggrieved by an assessment "who is not precluded by failure to object prior to or at the assessment hearing, or whose failure to so object is due to a reasonable cause, may appeal to the district court by serving a notice upon the mayor or clerk of the municipality" within thirty days of the date of the adoption of the assessment. DRB# 24 does not dispute that it did not appeal the 2010 or 2011 assessments to the state district court, although for reasons described below, it contends that it was not required to do so

1. On May 17, 2013, this Court stayed all proceedings pending this Court's issuance of a Report and Recommendation on the parties' dispositive motions and denied without prejudice plaintiffs' motions to compel discovery [Docket No. 42] and motion to amend the pretrial scheduling order and to expand the number interrogatories allotted to plaintiffs [Docket No. 48].

2. Plaintiffs sued the City of Minneapolis and unknown City agents, employees and servants. For the purpose of this decision, the Court will refer collectively to these defendants as the "City."

because the City lacked jurisdiction to assess the VRB fees in the first instance. Defendant's Letter dated March 14, 2013 [Docket No. 39].

DRB# 24 and 701 Newton sued the City in state court on June 4, 2012, and on June 22, 2012, the City removed the case to federal court. *See* Complaint, Notice of Removal [Docket No. 1].

Plaintiffs' Complaint alleged that on April 25, 2001, the City adopted an ordinance for the collection of VBR fees. Compl., ¶ 9 (citing Minneapolis Code of Ordinances ("M.C.O.") § 249.80(i)(1) (2001)). The ordinance required that all owners of vacant buildings in the City pay a yearly fee of $400.00. *Id.* The stated purpose of the ordinance was to recover the administrative costs expended by the City in registering and monitoring the buildings. *Id.* The ordinance also gave the City the authority to impose special assessments to collect unpaid VBR fees. *Id.*

On May 26, 2006, the City amended the ordinance, increasing the amount of the yearly fee to $2,000.00. *Id.,* ¶ 10 (citing M.C.O. § 249.80(i)(1) (2006)). The ordinance was further amended on February 29, 2008, setting the annual fees as established according to a fee schedule. *Id.,* ¶ 11. The 2008 amended ordinance restated the purpose of the fee as intending to recover all costs "incurred by the city for monitoring and regulating vacant buildings including nuisance abatement, enforcement and administrative costs." *Id.* Also in 2008, the City set the fee at $6,000.00. *Id.,* ¶ 12, Ex. A. In 2009, the VBR fee was set at $6,360 (*Id.,* ¶ 14); in 2010, the VBR fee was set at $6,650 (*Id.,* ¶ 15); in 2011, the VBR fee was set at $6,746 (*Id.,* ¶ 16); and in 2012, the fee was set at $6,949. *Id.,* ¶ 17.

Plaintiffs asserted that the City calculated the fees relying on a flawed study prepared by the City's Inspections Department and the fees are excessive and unreasonable in light of their purpose as codified in the Minneapolis Code of Ordinances. Compl., ¶¶ 12–13, 20–41. Plaintiffs further alleged that the VBR fee is materially in excess of the amount required to actually process the annual VBR form and to monitor the vacant building site, as permitted by the ordinance. *Id.,* ¶ 21. In support of this allegation, plaintiffs analyzed what they believed to be the actual costs of inspections based on the City's budget. *Id.,* ¶¶ 23–33. Based on plaintiffs' analysis, the City's actual costs of processing the vacant building registration fee and monitoring the vacant building sites ranged from $387 in 2007 to $1,300 in 2012. *Id.,* ¶ 34. Consequently, the fees assessed by the City resulted in overcharges ranging from $1,173 in 2006 to $6,168 in 2011 and $5,649 in 2012. *Id.,* ¶ 35. Because the VBR fee so grossly exceeds the City's actual costs of administration and monitoring, plaintiffs characterized the fee to be a fine. *Id.,* ¶ 40. Plaintiffs maintained that they, and similarly situated property owners,[3] are entitled to recover all fees actually paid and have abated any assessments which have not been paid. *Id.,* ¶¶ 42–50.

Plaintiffs also alleged that the 8% interest rate charged by the City on unpaid VBR fees exceeds the 5% interest rate permitted by Minn.Stat. § 435.17. *Id.,* ¶¶ 85–91. Plaintiffs asserted that the City's VRB fee assessments violated their rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and their rights under Sections Eight, Ten and Thirteen of the Minnesota State Constitution. *Id.,* ¶¶ 51–121. Plaintiffs also claimed that the exces-

---

**3.** This matter has not yet been certified as a class action.

sive interest rates are in violation of Minnesota's usury law, Minn.Stat. § 334.01, Subd. 1, which sets interest rates at 6% unless otherwise contracted for in writing. *Id.,* ¶¶ 122–128.

Plaintiffs further alleged that the City does not have the legal authority to specially assess VBR fees absent an enabling statute. *Id.,* ¶ 131. Plaintiffs claimed that before 2008, Minn.Stat. § 429.101 did not allow for the special assessment of VBR fees. *Id.,* ¶ 130. In 2008, the statute was amended to allow municipalities to specially assess VBR fees, but for the limited purpose of administrating programs to identify and register vacant buildings. *Id.,* ¶¶ 133–136 (citing Minn.Stat. § 429.101, subd. 1(12)). Plaintiffs maintained that the City's attempt to recover costs beyond the limits of the enabling statute, such as for monitoring and nuisance abatement, renders the VBR ordinance void both before and after the 2008 statutory amendment. *Id.,* ¶¶ 132, 136.

Plaintiffs alleged that the City failed to properly notify them and other vacant property owners of the basis of costs for the VBR fees, and that as such, it failed to comply with the procedural requirements of M.C.O. § 227.100, which provides that the City "shall" provide notice of basis for the costs charged. *Id.* ¶¶ 137–143.

Plaintiffs further alleged that they, and similarly situated vacant property owners, did not benefit from the VBR fees, and that as such, the City violated Section Thirteen of the Minnesota State Constitution, as well as the Fourth, Fifth, Fourteenth Amendments of the United States Constitution. *Id.,* ¶¶ 144–150.

Plaintiffs alleged intentional or negligent misrepresentation by the City of the costs incurred in monitoring and registering vacant buildings as well the legality of the interest rate charged; the City unjustly enriched itself through its administration of the VBR program; and slander of title as a result of the City's publication of the special assessments on 701 Newton. *Id.,* ¶¶ 151–177, 178–180, 181–184.

Among other grounds of relief, plaintiffs sought a judgment that the VBR fees and interest rates charged do not comply with the relevant M.C.O. provisions or state statutes and that they were entitled to attorneys' fees pursuant to 42 U.S.C. § 1983. *Id.,* ¶¶ 185–189; Prayer for Relief, ¶¶ a–f.

The City answered, generally admitting the history of amendments to the VBR fee ordinance, denying the existence of any similarly situated properties, denying any state or federal constitutional violations, and generally denying the allegations in the Complaint, except for the facts relating to the assessment of the VBR fees against 701 Newton. The City asserted various defenses including statutory, discretionary, official, vicarious and qualified immunity; plaintiffs' federal constitutional claims were barred by the Tax Injunction Act; plaintiffs' claims were barred by the applicable statute of limitations; and failure to exhaust available judicial remedies. First Amended Answer of Defendant City of Minneapolis, [Docket No. 4].

Plaintiffs moved for partial summary judgment on the City's Tax Injunction Act defense. [Docket No. 9]. Plaintiffs moved separately for partial summary judgment on their claims that the VBR fee is void and unenforceable. [Docket No. 15]. Defendants initially moved for summary judgment on all of plaintiffs' claims, but later, based on an agreement with plaintiffs, excluded from its motion plaintiffs' claims that the VBRs were excessive and unreasonable.[4] [Docket No. 33].

---

4. On March 8, 2013, plaintiffs narrowed the scope of their original partial summary judg-

## II. LEGAL STANDARD

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co.*, 980 F.2d 1217, 1219 (8th Cir.1992). " 'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' " *DePugh v. Smith*, 880 F.Supp. 651, 656 (N.D.Iowa 1995) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). "[I]f the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted." *DePugh*, 880 F.Supp. at 656 (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the burden of showing that the material facts in the case are undisputed. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548; *see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs.*, 224 F.3d 735, 738 (8th Cir.2000). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505;

*Krenik v. County of LeSueur*, 47 F.3d 953, 957 (8th Cir.1995). "The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial." *Minnesota Laborers Health & Welfare Fund v. Swenke*, 2003 WL 21521755, *1, 2003 U.S. Dist. LEXIS 11439, *4–5 (D.Minn.2003) (citations omitted).

Summary judgment is appropriate where the material facts are not in dispute, and the court need only apply the law to the facts in the record. *See Eisenrich v. Minneapolis Retail Meat Cutters*, 282 F.Supp.2d 1077, 1080–81 (D.Minn.2003) (citing *Oldham v. West*, 47 F.3d 985, 988 (8th Cir.1995)).

## III. DISCUSSION

### A. *Plaintiffs' Motion for Partial Summary Judgment on Defendants' Tax Injunction Act Defense [Docket No. 9]*

The City asserted that plaintiffs' federal constitutional claims are barred by the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341. First Amended Answer of Defendant City of Minneapolis ("First Amend. Answer") [Docket No. 4], p. 34, ¶ 16. In support of their motion for partial summary judgment on this claim, plaintiffs argued that the TIA jurisdictional bar is limited to suits questioning the constitutionality of

---

ment motion, excluding from consideration whether the VBR fee is excessive or unreasonable. Plaintiffs' Letter dated March 8, 2013 [Docket No. 36]. Plaintiffs conceded that this issue was not ripe for summary judgment in light of the fact that discovery had not been completed. *Id.* The City agreed not to request a determination on those issues. Defendants' Letter dated March 8, 2013 [Docket No. 37]. Plaintiffs filed red-lined versions of their brief in support of partial summary judgment and

reply reflecting this change in scope. Plaintiffs' Memorandum in Support of their Motion for Partial Summary Judgment ("Pls.' Mem. PSJ") [Docket No. 36]; Plaintiffs' Reply Memorandum to Defendant's Memorandum in Opposition to Plaintiffs' Motions for Partial Summary Judgment ("Pls.' Reply") [Docket No. 36]. Unless otherwise noted, this Court has referenced the red-lined version of plaintiffs' memoranda throughout this Report and Recommendation.

taxes. Plaintiffs' Memorandum in Support of their Motion for Partial Summary Judgment as to Defendants' Tax Injunction Act Defense, p. 4 [Docket No. 13]. Plaintiffs contended that VBR fees are fees and not taxes, and accordingly the TIA does not bar the present action. *Id.*

The City conceded that the VBR is a fee and not a tax. Defendants' Memorandum in Opposition to Plaintiffs' Simultaneous Motions for Partial Summary Judgment ("Defs'. Mem.") p. 24 [Docket No. 25].[5] Nonetheless, the City argued that the Court should withhold summary judgment on the defense. *Id.*, p. 24. The City maintained that the VBR fee is neither excessive nor unreasonable, but if the Court disagreed, the City should be allowed to characterize the fee as a revenue-raising measure. Should the Court accept this characterization, the VBR fee would become a tax, at which point the matter would fall within the TIA's jurisdictional limitation. *Id.*, p. 25.

Plaintiffs replied that the City cannot maintain that the Court has jurisdiction to decide whether the VBR fee is reasonable and simultaneously argue that if the fees is found to be excessive and unreasonable, then the Court would lose jurisdiction over the matter. Pls.' Reply, p. 10 [Docket No. 29].

 The TIA prohibits federal courts from exercising jurisdiction over certain claims involving state taxation. The TIA provides:

> The district courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in state courts.

28 U.S.C. § 1341. Whether an assessment constitutes a "tax" for the purpose of the TIA or a fee is a question of federal law and the court is not required to rely on a municipalities' characterization of the assessment. *Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County,* 115 F.3d 1372, 1382 (8th Cir.1997) (citing *Wright v. McClain,* 835 F.2d 143, 144 (6th Cir.1987)). To determine whether an assessment or levy is a tax, "the court must look to the purpose underlying the premium." *Marigold Foods, Inc. v. Redalen,* 834 F.Supp. 1163, 1166 (D.Minn.1993). "Premiums primarily imposed for revenue-raising purposes are considered to be taxes." *Id.* (citation omitted). "Premiums imposed for regulatory or punitive purposes, even though they may also raise revenue, generally are not considered taxes." *Id.* (citation omitted).

 Pursuant to M.C.O. § 249.80(i)(1), adopted in 2001, the purpose of the VBR was to defray administrative costs for registering and processing the vacant building registration form and for the costs of the City in monitoring the vacant building site. Pl. TIA Mem., p. 5. The 2008 amendment provided that the VBR is "imposed to recover all costs incurred by the City for monitoring and regulating vacant buildings, including nuisance abatement, enforcement and administrative costs." *Id.*, p. 6. By its express language, the purpose underlying the VBR fee is clearly regulatory and is not levied to raise revenues, and the City has not offered any evidence to the contrary. Further, the City has not provided any evidence that it has ever considered or treated the VBR fee as a tax. Finally, the City *admitted* that the VBR fee is not a tax. Defs. Mem., p. 24. Defendants' desire to hang onto their TIA

---

**5.** The City relied on its Memorandum in Opposition to plaintiffs' motions for partial summary judgment and did not submit an additional memorandum in support of its own motion for summary judgment. [Docket No. 33].

defense "just in case" the Court determines at some point that the VRB is unreasonable is no basis for denying summary judgment on this defense.[6] This Court recommends that summary judgment be granted on the City's TIA defense.

### B. *Plaintiffs' Claims are Time–Barred and Should be Dismissed with Prejudice*

The parties' arguments in favor of partial summary judgment are summarized as follows. According to plaintiffs, there is no ordinance enabling the City to specially assess VBR fees. Pls'. Mem. PSJ, pp. 16–19. The collection of unpaid VBR fees is governed by M.C.O. § 227.100, which outlines the notice requirement for the removal of certain offensive matter or nuisances from property, which exist in violation of M.C.O. § 227.90. *Id.*, p. 16. M.C.O. § 227.90 (2000) refers to the removal and disposition of "offensive matter," "offensive conditions" and "nuisance." *Id.*[7] Accordingly, nuisance removal is a condition precedent to special assessment. *Id.*, p. 17.

Plaintiffs contended that because the City could not reasonably expect the vacant building itself to be removed, the ordinance contemplates a different type of nuisance altogether and thus, the City lacked an enabling ordinance to specially assess the VBR fees. *Id.*, pp. 16–19. In addition, Minnesota did not enact a statute permitting special assessment of VBR fees until 2008. *Id.*, p. 20. The statute enacted in 2008, while enabling special assessment of VBR fees, limited the recoverable costs

to those expended identifying and registering vacant buildings. *Id.*, p. 19 (citing Minn.Stat. § 429.101, subd. 1(a)(12) (2008)). The City's VBR ordinance exceeded the scope of the statute by including costs associated with monitoring, nuisance abatement, and enforcement. *Id.*, pp. 19–20,

In addition, plaintiffs maintained that the City lacked jurisdiction to specially assess the VBR fees against 701 Newton because the City failed to comply with statutory notice requirements regarding its Notice of Intent to Assess. *Id.*, pp. 20–23. Plaintiffs asserted that the City's Notice of Intent to Assess failed to meet the requirements of Minn.Stat. § 429.061, subd. 1, in that the notices received by DRB# 24 failed to state the general nature of the improvement at issue, did not identify any proposed assessment roll on file with the clerk, and did not describe the area to be assessed. *Id.*, pp. 21–23.

Next, Plaintiffs argued that the annual interest rate of 8% charged by the City for special assessments exceeds the 5% maximum interest rate permitted by statute and at any rate, the City was charging an effective interest rate of 13.67%, not the 8% it claimed to be charging. *Id.*, pp. 23–26.

In response, the City contended that since at least 2001, M.C.O. § 249.80 has authorized the City to levy and collect unpaid VBR fees as a special assessment. As to plaintiffs' argument that nuisance removal was a condition precedent to the imposition of the assessment pursuant to

---

**6.** To the extent that the District Court adopts this Court's recommendation that defendants' motion for summary judgment be granted, plaintiffs' summary judgment motion on the City's TIA defense is moot.

**7.** The most recent version of M.C.O. 227.90(a) is clearer regarding what the City considers to

be offensive or a nuisance, listing noxious weeds, barnyard litter, manure, yard cleanings, dead animals, inoperable vehicles or "other foul or unhealthy material" as examples of nuisances. http://library.municode.com/index.aspx?clientId=11490&stateId=23&stateNam=minnesota

M.C.O. § 227.100, the City stated that M.C.O. § 249.80 merely applied the procedural requirements for levying and collecting assessments described by M.C.O. § 227.100. Defs.' Mem., pp. 6–7. In other words, the City has merely borrowed the procedural process described in M.C.O. § 227.100.

Further, the City asserted that it was statutorily authorized to specially assess VBR fees both before and after the 2008 amendment. *Id.*, pp. 7–11. Before 2008, Minn.Stat. § 429.101, subd. 1(c) (1991)[8] allowed municipalities to specially assess charges made for the removal of public health or safety hazards from private property. *Id.*, p. 8. Because vacant properties impose a variety of public health and safety hazards, the statute authorized the City to institute the VBR program. *Id.*, pp. 8–9. In 2008, the statute was amended to explicitly provide for the collection of VBR fees. *Id.*, p. 10; Minn.Stat. § 429.101, subd. 1(12) (2008).[9] According to the City, because the City's program is designed to identify and register vacant buildings, the City should be allowed to recover any and all expenses associated with that program, regardless of whether those expenses are directly related to identification and registration. *Id.*, pp. 9–10.

The City also contended that plaintiffs' claims regarding the lack of an enabling statute to authorize the pre–2008 VBR fees were time-barred because plaintiffs failed to appeal the assessments to the state district court within thirty days of the adoption of the assessments. *Id.*, pp. 9–10. Minnesota Stat. § 429.081 provides that a property owner has thirty days from the adoption of the assessment to appeal to the state district court. *Id.*, p. 10. Any objections not appealed are deemed waived. *Id.* At the hearing, the City expanded this argument, claiming that because plaintiffs failed to appeal any of their VRB assessments to the state district court, *all* of their claims arising out of the assessments were time-barred and must be dismissed.

As for the notice requirements of Minn. Stat. § 429.061, the City maintained that they do not apply to the VBR ordinance. *Id.*, pp. 12–14. According to the City, municipalities are allowed to adopt their own special assessment procedures. *Id.*, p. 12 (citing *Curiskis v. City of Minneapolis*, 729 N.W.2d 655, 658 (Minn.Ct.App. 2007) ("Minnesota Statutes Chapter 429 governs local improvements and special assessments, and allows a city to use either Chapter 429 or its home rule charter in making improvements and imposing special assessments).") and that is what the City did here. M.C.O. § 249.80, subd. (j)(3) provides that the procedural requirements of M.C.O. § 227.100 apply to levying and collection of VBR fees. M.C.O. 227.100 requires that the Notice of Intent to Assess "shall" state:

[T]he amount and basis for the costs and the time, date and place of a hearing before a hearing officer appointed by the council to determine the validity and

---

8. This provision states:

In addition to any other method authorized by law or charter, the governing body of any municipality may provide for the collection of unpaid special charges for all or any part of the cost of ... (c) removal or elimination of public health or safety hazards from private property, excluding any structure included under the provisions of sections 463.15 to 463.26."

9. This provision states:

(a) In addition to any other method authorized by law or charter, the governing body of any municipality may provide for the collection of unpaid special charges for all or any part of the cost of: ... (12) the recovery of delinquent vacant building registration fees under a municipal program designed to identify and register vacant buildings."

amount of the proposed assessment ... the notice shall state that the owner may appeal the assessment to the district court within thirty (30) days after the adoption of the special assessment by the council at an annual meeting. The notice shall also inform the owner of the provisions of Minnesota Statutes Sections 435.193 to 435.195 and of the existence of any deferment procedure.

According to the City, the notices received by DRB# 24 fully complied with these requirements. Defs.' Mem., pp. 12–14.

As for plaintiffs' arguments regarding the interest rate charged on unpaid VBR fees, the City argued that it has the authority to apply different interest rates to each type of special assessment. *Id.*, p. 14–15. The City maintained that Minn. Stat. § 435.17, cited by plaintiffs, only applies to assessments for public improvements and that other Minnesota statutes permit an interest rate of 8%. *Id.*, p. 14 9 (citing Minn.Stat. § 463.161, Minnesota's abatement statute, which allows municipalities to charge 8% interest for assessments relating to removal of hazardous conditions at any hazardous building or property). More to the point, Chapter 435 applies to assessments for public improvements, not assessments for VBR fees. *Id.*, p. 15. The City further claimed that plaintiffs' calculation of the effective interest rate charged by the City is flawed and that in fact only an 8% interest rate was charged. *Id.*, pp. 16–17.

In reply, plaintiffs asserted that Minn. Stat. § 429.101 did not give the City the statutory authority to specially assess VBR fees, because property owners were already charged separately for the removal of public health and safety hazards. Pls'. Reply, p. 3. Plaintiffs contended that the VBR fee, if assessed for the purpose of

removing public health and safety violations, would amount to a second billing for the same services. *Id.*

Plaintiffs also submitted that even if M.C.O. § 227.100 governs the procedural requirements for special assessments, the City failed to meet those standards. *Id.*, pp. 5–6. Plaintiffs maintained that the City's Notice of Intent to Specially Assess does not provide notice of the basis for the costs recovered by the assessment. *Id.* Thus, the City lacked jurisdiction under either set of procedural guidelines. *Id.*

In a letter sent to this Court after the hearing, the City clarified that plaintiffs had appealed their assessments at administrative hearings, but that plaintiffs never appealed the assessments to the state district court. Defendant's Letter dated March 14, 2013 [Docket No. 39]. Plaintiffs responded, maintaining that the City lacked jurisdiction to assess the VBR in the first instance as a result of the defective notices DRB# 24 received, thus rendering irrelevant the question of whether plaintiffs appealed to the state district court within the thirty-day time period. Plaintiffs' Letter Dated March 14, 2013. [Docket No. 40]. Plaintiffs did not, however, contest the City's factual assertions regarding their failure to appeal. *Id.*

■ After a careful reading of the relevant ordinances and statutes and in light of the uncontested facts regarding DRB# 24's failure to appeal the City's assessments to the state district court, this Court concludes that the Gordian knot created by plaintiffs' reference to and reliance on various (and at times, seemingly irrelevant and inapplicable) statutes [10] can be easy cut by reference to the governing

---

**10.** For example, Minn.Stat. § 435.17, which limits interest collected on assessments for public improvements to 5%, is completely inapplicable to this matter.

limitations period contained in Minn.Stat. § 429.081.

Minnesota Stat. § 429.081 provides:

*Within 30 days after the adoption of the assessment, any person aggrieved,* who is not precluded by failure to object prior to or at the assessment hearing, or whose failure to so object is due to a reasonable cause, *may appeal to the district court by serving a notice upon the mayor or clerk of the municipality.* The notice shall be filed with the court administrator of the district court within ten days after its service. The municipal clerk shall furnish appellant a certified copy of objections filed in the assessment proceedings, the assessment roll or part complained of, and all papers necessary to present the appeal. The appeal shall be placed upon the calendar of the next general term commencing more than five days after the date of serving the notice and shall be tried as other appeals in such cases. The court shall either affirm the assessment or set it aside and order a reassessment as provided in section 429.071, subdivision 2. If appellant does not prevail upon the appeal, the costs incurred shall be taxed by the court and judgment entered therefor. *All objections to the assessment shall be deemed waived unless presented on such appeal.* This section provides the exclusive method of appeal from a special assessment levied pursuant to this chapter.

(emphasis added).

In addition, M.C.O. § 227.100 requires that the Notice of Intent to Assess to state:

[T]he amount and basis for the costs and the time, date and place of a hearing before a hearing officer appointed by the council to determine the validity and amount of the proposed assessment ... *the notice shall state that the owner may appeal the assessment to the district court within thirty (30) days after the adoption of the special assessment by the council at an annual meeting.* The notice shall also inform the owner of the provisions of Minnesota Statutes Sections 435.193 to 435.195 and of the existence of any deferment procedure.

(emphasis added).

■■■■■ This Court is required to construe the words of the statute according to their plain meaning. *See American Family Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) ("Basic canons of statutory construction instruct that we are to construe words and phrases according to their plain and ordinary meaning."). Ordinances are subject to the same construction. *Eagan Econ. Dev. Auth. v. U–Haul Co. of Minn.,* 787 N.W.2d 523, 535 (Minn. 2010) (stating that statutory construction rules apply to construction of municipal ordinances). Further, a statute of limitations "must be strictly construed against a plaintiff." *PHL Variable Ins. Co. v. U.S. Bank Nat'l Assoc.,* Civ. No. 10–1197 (RHK/AJB), 2010 WL 3926310 at *5 (D.Minn. Oct. 4, 2010). The appeal of a special assessment to the district court is "wholly statutory, there being no common-law right to such an appeal, and ... the conditions imposed by the statute must be strictly complied with. The conditions will not be extended by construction." *Wessen v. Village of Deephaven,* 284 Minn. 296, 170 N.W.2d 126, 128 (1969). Furthermore, "[t]he construction and applicability of statutes of limitations are questions of law." *Noske v. Friedberg,* 670 N.W.2d 740, 742 (Minn.2003).

■■■■■ There is no doubt that the limitation period reflected in Minn.Stat. § 429.081 is a statute of limitations that expires thirty days after the adoption of the assessment. *Sykes v. City of Roch-*

*ester,* 787 N.W.2d 192, 197 (Minn.Ct.App. 2010). The plain language of the statute required plaintiffs to bring *all* of their challenges and objections to the City's VBR assessment—including any of the arguments asserted in this suit—to the state district court. That reading of the statute is entirely consistent with the general purpose of any statute of limitations and particularly Minn.Stat. § 429.081—to prevent property owners from mounting late challenges to assessments and to provide finality for the municipality regarding the legitimacy of its assessments.

This Court is not bound by a decision by the state district court. Nonetheless, this Court has considered the order of State District Court Judge Marilyn Brown Rosenbaum dated December 12, 2012, in *Meldahl v. City of Minneapolis,* Henn. Co. Dist. Ct. File No. 27–CV–11–24739, and notes that this Court's conclusion regarding the thirty-day limitation period is consistent with Judge Rosenbaum's decision. *See* Defendant's Letter dated December 19, 2012 [Docket No. 30] (attaching a copy of Judge Rosenbaum's decision in *Meldahl*).

In *Meldahl,* a property owner in Minneapolis was assessed VBR fees and sidewalk repair assessments, among other assessments on his vacant properties. *Id.* Citing Minn.Stat. § 429.081, Judge Rosenbaum granted summary judgment to the City on Meldahl's appeal of the sidewalk assessments, noting that he filed his appeal eighteen days beyond the thirty-day limit described by the statute. *Id.,* p. 7.

Plaintiffs contend, however, that the thirty-day limitation period is irrelevant because the City failed to comply with the notice requirements of Minn.Stat. § 429.061, and M.C.O. § 227.100(c) and (d). *See* Plaintiffs' Letter dated March 14, 2013. Plaintiffs' contention is meritless.

 Minn.Stat. § 429.061 relates to the assessment procedure for improvements such as curbs, gutters, and storm sewers and contains specific notice provisions, such as publication in a newspaper that the city council will meet to consider the proposed assessment. Not only have plaintiffs not established that this statute applies to the City's assessment of VBR fees, but plaintiffs failed to respond to the City's argument that the City may rely either on Chapter 429 or its home rule charter when imposing special assessments. In fact, nowhere in plaintiffs' fifty-three page Complaint did they ever allege that the notices they received from the City were defective. At any rate, Minneapolis is a home rule charter city [11] and as such has "'all of the legislative power possessed by the legislature of the state, save as such power is expressly or impliedly withheld.'" *Bolen v. Glass,* 755 N.W.2d 1, 5 (Minn.2008) (quoting *State v. Crookston,* 252 Minn. 526, 91 N.W.2d 81, 83 (1958)). The City's charter provides generally that "the City Council shall have full power and authority to make, ordain, publish, enforce, alter, amend or repeal all such ordinances for the government and good order of the City ... and by the same to declare and impose penalties and punishments, and enforce the same against any person or persons who may violate the provisions of any ordinance...." Minneapolis, Minn., City Charter ch. 4, § 5. In this case, the City adopted M.C.O. § 249.80, subd. (j)(3), which provides that unpaid VBR fees shall be levied and collected as a special assessment "as provided for under section 227.100...." Therefore, the Court must determine if the notices the plaintiffs received pursuant to M.C.O. § 227.100 were sufficient.

---

**11.** Minneapolis, Minn. City Charter, ch. 1, § 2.

M.C.O. § 227.100 provides that the notice of intent to assess:

[S]hall state the amount and basis for the costs and the time, date and place of a hearing before a hearing officer appointed by the council to determine the validity and amount of the proposed assessment. The notice may require, as a prerequisite to an owner's challenge of an assessment, that the owner file written objections to the assessment no later than fifteen (15) days before the hearing. The notice shall state that the owner may appeal the assessment to the district court within thirty (30) days after the adoption of the assessment by the council at an annual meeting. The notice shall also inform the owner of the provisions of Minnesota Statutes Sections 435.193 to 435.195 and of the existence of any deferment procedure.

Here, the 2011 and 2012 Notices of Intent to Assess received by plaintiffs stated the amount and basis for the amount of the assessment (identifying the VBR fee as the basis) and the time, date and place of the hearing the determine the validity of the assessment. Busch Decl. II, Exs. B, C. The Notices stated that if the assessments were adopted by the City Council, the assessments could be appealed to the district court within thirty days after final approval. *Id.* As permitted by M.C.O. § 227.100, the Notices informed plaintiffs that written objections to the assessments should be filed no later than fifteen days before the hearing.

Plaintiffs contended that the Notices were non-compliant because they did not state the basis of the cost for the special assessment. Pls.' Reply, p. 6. This Court disagrees. Without expressly saying so, plaintiffs seem to believe the City was required to present some sort of explanation or detail of the VRB fee itself (*e.g.* an analysis of the components of the VRB fees of the sort provided by plaintiffs in their original memorandum of law in support of their motion. *See,* Docket No. 17, pp. 27–30). The Court does not read the ordinance that way—the plain words of the ordinance state that the basis of the costs shall be provided, not that an analysis or breakdown of the costs are to be provided. The City's notices did just what they were supposed to do: they stated that the basis for the assessments are the current VBR fee as determined by the City, thereby providing the affected property owner with adequate notice under the ordinance. Whether the City could have done more to provide affected property owners with an explanation as to how the VBR fee was derived is irrelevant; M.C.O. § 227.100 does not require more and the Court will not read any such requirement into the ordinance.

In summary, the Court concludes that summary judgment in the City's favor is required. Contrary to plaintiffs' assertion, the City did not lack jurisdiction to assess the VBR fees because the Notices of Intent to Assess the plaintiffs received satisfied the requirements of M.C.O. § 227.100. It is undisputed that plaintiffs did not timely appeal their VBR assessments to the state district court. Accordingly, having failed to timely appeal any of the assessments by the City, all grounds for objecting to the assessments barred and waived.[12]

12. Even if plaintiffs timely appeal an assessment, this Court questions whether it can ever entertain a suit challenging the assessment. An appeal from a special assessment is in the nature of a special proceeding. *Marzitelli v. City of Little Canada,* 582 N.W.2d 904, 905–06 (Minn.1998). A final order or judgment issued by the state district court on an assessment is appealable to the Minnesota Court of Appeals pursuant to Minn. R. Civ.App. P. 103.03(g). Because Minn.Stat. § 420.081 provides the exclusive remedy for a party

**1104**

## IV. RECOMMENDATION

For the reasons set forth above, IT IS RECOMMENDED that:

(1) Plaintiffs' Motion for Partial Summary Judgment on Defendant's Tax Injunction Act Defense [Docket No. 9] be determined moot in light of this Court's recommendation that Defendants' Motion for Summary Judgment be granted.

(2) Plaintiffs' Motion for Partial Summary Judgment [Docket No. 15] be DENIED.

(3) Defendants' Motion for Summary Judgment [Docket No. 33] be GRANTED.

(4) This matter be dismissed with prejudice.

Dated: August 2, 2013

aggrieved by a special assessment and requires the appeal to be decided by the state district court, it is unclear that the federal district court could exercise jurisdiction over claims arising out of the City's VBR fees.